**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

UnitedHealth Group, Inc.; Care Improvement Plus South Central Insurance Company; UnitedHealthcare of Wisconsin, Inc.; UnitedHealthcare Benefits of Texas, Inc.; UnitedHealthcare of the Midlands, Inc.; Preferred Care Partners, Inc.; UHC of California; Physicians Health Choice of Texas, LLC; Peoples Health, Inc.; UnitedHealthcare of New York, Inc.; UnitedHealthcare Community Plan of Texas, L.L.C.; UnitedHealthcare of the Rockies, Inc.; Oxford Health Plans (NJ), Inc.; UnitedHealthcare Plan of the River Valley, Inc.; UnitedHealthcare of Florida, Inc.; UnitedHealthcare Insurance Company; Arizona Physicians IPA, Inc.; UnitedHealthcare of the Mid-Atlantic, Inc.; UnitedHealthcare Community Plan, Inc.; and UnitedHealthcare of New England, Inc.,

*Plaintiffs*,

v.

Centers for Medicare & Medicaid Services,

7500 Security Boulevard
Baltimore, MD 21244;

U.S. Department of Health & Human Services,

200 Independence Avenue, S.W.
Washington, D.C. 20201,

*Defendants*.

Civil Action No. 2:26-cv-131

## COMPLAINT

1. Plaintiffs are a group of affiliated Medicare Advantage ("MA") plans and their parent organization, UnitedHealth Group, Inc. Six months ago, this Court held that Defendant Centers for Medicare & Medicaid Services ("CMS") could not lawfully use 20 measures to

calculate another MA insurer's "Star Rating." Yet CMS relied on 14 of those same measures when it calculated the 2027 Star Ratings for Plaintiffs' MA contracts. Star Ratings are CMS's assessment of the quality and performance of MA plans, which are private insurers that provide health benefits to Medicare beneficiaries in place of CMS directly. The Star Ratings carry real consequences. Medicare beneficiaries consider them when choosing coverage, and plans with higher Star Ratings are generally eligible for additional federal funding that they use to offer lower premiums, reduced cost-sharing, and better benefits. A plan's Star Rating thus directly affects the benefits and healthcare offerings that Medicare beneficiaries receive. Plaintiffs bring this action so that their 2027 Star Ratings are calculated in accordance with CMS's statutory authority and procedural obligations.

2. CMS assigns Star Ratings annually based on more than 40 measures of plan quality, such as the number of plan members who received screening for certain cancers or how plan members rate the quality of healthcare they received. CMS typically revises the list of measures and many of their specifications each year. But CMS acknowledges it does not engage in a notice-and-comment rulemaking process when revising the measure specifications, even though the Medicare Act requires that process for any "statement of policy" "that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive [Medicare] services or benefits." 42 U.S.C. § 1395hh(a)(2); *see* Appellants' Br. 10, *Clover Ins. Co. v. HHS*, No. 26-12553 (11th Cir. Aug. 31, 2026) ("CMS has never promulgated" measure specifications for Star Ratings "by regulation").

3. CMS assigns each plan a Star Rating of 1 to 5 for each measure. The agency then takes a weighted average of all measures and applies adjustments to determine the plan's overall

Star Rating for the given year (in half-Star increments from 1 to 5). Although Congress directed CMS to assign the Star Ratings "based on" specified data, 42 U.S.C. § 1395w-23(o)(4)(A) (citing *id.* § 1395w-22(e)), CMS acknowledges that it relies on other data for certain measures, *see* Appellants' Br. 46-47, *Clover*, No. 26-12553 (11th Cir. Aug. 31, 2026).

4. In November 2025, Clover Insurance Company brought suit in this District, challenging 20 measures that CMS used to calculate Clover's 2026 Star Rating (the "*Clover* Measures"). On May 27, 2026, the Court issued a decision holding that CMS's reliance on those 20 measures was invalid under the Administrative Procedure Act ("APA"). *Clover Ins. Co. v. HHS*, 2026 WL 1483515 (S.D. Ga. May 27, 2026). The Court held that CMS's use of 10 measures exceeded the agency's statutory authority because those measures were not "based on" the data sources that Congress specified. 42 U.S.C. § 1395w-23(o)(4)(A). The Court further held that CMS's reliance on the other 10 measures was invalid because the agency failed to promulgate them through a notice-and-comment rulemaking process. *Id.* § 1395hh(a)(2). CMS did not seek a stay; it complied with the judgment and recalculated Clover's 2026 Star Rating without the 20 challenged measures. As a result of that recalculation, Clover's 2026 Star Rating increased from 3.5 to 4.5 Stars. CMS appealed, and the Eleventh Circuit has expedited the appeal and scheduled oral argument for January 21, 2027. CMS has requested a decision by April 2027.

5. Both before and after CMS filed its notice of appeal in *Clover*, Plaintiffs had discussions with CMS on what potential changes to the Star Rating program CMS might make based on the *Clover* ruling, anticipating the agency might take corrective action before releasing the 2027 Star Ratings. But CMS ultimately did not remedy either of the defects identified in *Clover* in connection with the 2027 Star Ratings process. On October 8, 2026, CMS took final agency action by announcing the 2027 Star Ratings, which CMS calculated for Plaintiffs using

measures the Court invalidated in *Clover*. CMS calculated 2027 Star Ratings for Clover differently than for other market participants, excluding measures the Court struck down in *Clover* only for Clover's plans. But there is no material legal distinction between the measures CMS excluded for Clover and those Plaintiffs challenge here.

6. In this action, Plaintiffs challenge 26 measures used to calculate their 2027 Star Ratings. Fourteen of those measures are among the *Clover* Measures the Court has already held CMS may not lawfully use to determine Star Ratings. The *Clover* ruling invalidated CMS's use of 8 of those 14 measures—2027 numbers C03, C04, C05, C15, C16, C21, C23, and C26—for lack of notice-and-comment rulemaking under 42 U.S.C. § 1395hh(a)(2).[1] The *Clover* ruling invalidated CMS's use of the other 6 of those 14 measures—2027 numbers D05, D06, D08, D09, D10, and D11—for exceeding CMS's statutory authority under 42 U.S.C. § 1395w-23(o)(4)(A).[2] The remaining 12 measures that Plaintiffs challenge here—2027 numbers C01, C06, C10, C13, C14, C17, C18, C19, C20, C25, D12, and D13—fall within those *Clover* holdings for two reasons.[3]

a. *First*, as with the *Clover* Measures—including the measures *Clover* invalidated on statutory-authority grounds—the specifications for the 12 additional measures Plaintiffs challenge here were not promulgated through notice-and-comment rulemaking. *Clover* held that rulemaking was required for the measure

[1] The numbering of the measures changed from 2026 to 2027. The measures that are numbered C21, C23, and C26 for 2027 were numbered C22, C24, and C27, respectively, for 2026.

[2] The measure that is numbered D11 for 2027 was numbered D12 for 2026. The measure that was numbered D11 for 2026 (MTM Program Completion Rate for CMR), which was among the 20 *Clover* Measures, was dropped for 2027 and is therefore not at issue in this action. Plaintiffs do not challenge the remaining *Clover* Measures in this case.

[3] The measures that are numbered C17, C18, C19, C20, and C25 for 2027 were numbered C18, C19, C20, C21, and C26, respectively, for 2026. The measures that are numbered D12 and D13 for 2027 were not used for 2026.

specifications because they are "statement[s] of policy" that "establis[h] or chang[e] a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of … entities … or organizations to furnish … [Medicare] services or benefits." 42 U.S.C. § 1395hh(a)(2).

b. *Second*, two of the additional 12 measures Plaintiffs challenge here—2027 numbers D12 and D13—are also invalid because, like 10 of the measures held unlawful in *Clover*, they are "based on" data not collected under 42 U.S.C. § 1395w-22(e). 42 U.S.C. § 1395w-23(o)(4)(A).

7. In sum, Plaintiffs are challenging all 26 of the measures at issue in this action (14 of the *Clover* Measures and 12 additional measures) for lack of notice-and-comment rulemaking under 42 U.S.C. § 1395hh(a)(2). Plaintiffs are separately challenging 8 of those 26 measures (6 of the *Clover* Measures and 2 additional measures) because CMS derived those measures from data that CMS lacked statutory authority to use under 42 U.S.C. § 1395w-23(o)(4)(A).

8. Forty-five of the 51 plan contracts at issue in this action received a 2027 Star Rating. CMS's inclusion of the measures challenged in this action negatively impacted those 45 contracts' 2027 Star Ratings. The remaining 6 plan contracts are new contracts that did not receive 2027 Star Ratings but whose eligibility for payments is based on a weighted average of the Star Ratings of their parent organization's other plan contracts. Because all plan contracts at issue in this action have a common parent organization—UnitedHealth Group, Inc.—CMS's inclusion of the challenged measures in the calculation of the 2027 Star Ratings for the 45 plan contracts that received such a rating also negatively impacted the weighted averages for the 6 new plan contracts.

9. If not promptly corrected, the improperly calculated 2027 Star Ratings will cause imminent harm to Plaintiffs and plan beneficiaries. Those Star Ratings (and the resulting weighted

averages for new plan contracts) have a significant impact on the payments that Plaintiffs will receive for plan year 2028. Plaintiffs use those payments for the benefit of plan members by offering lower premiums, reduced cost-sharing for medical and pharmacy benefits, and supplemental benefits like dental, vision, and hearing coverage. Conversely, lower payments to MA plans mean that plan members face worse benefits.

10. The statutory deadline for CMS to issue the final Medicare Advantage and Part D Rate Announcement (Rate Notice)—*i.e.*, CMS's payment methodology—for plan year 2028 is April 5, 2027, and the deadline for plans to submit their bids for 2028 plan benefits is June 7, 2027. A plan's 2027 Star Rating is a critical factor in developing a bid for plan year 2028, since that Star Rating dictates what level of payments the plan is eligible to receive. Accordingly, if plans develop bids based on improperly calculated Star Ratings, plans would need to revise those bids after Star Ratings were corrected in order for beneficiaries to have access to more robust plan options.

11. Beneficiaries are also already suffering harm from the 2027 Star Ratings because unreliable Star Ratings undermine the very plan-quality comparisons that Star Ratings are intended to facilitate. Potential Medicare enrollees began reviewing Star Ratings immediately upon publication and using those Star Ratings to select coverage for 2027 during the open enrollment period that began on October 15, 2026. This year, there may be even more enrollees using Star Ratings as a factor in plan selection. Following widespread plan and service-area exits across the Medicare Advantage market for the 2027 plan year, an estimated 3.1 million Medicare beneficiaries must select new coverage during this open enrollment period. *See* Jeannie Fuglesten Biniek et al., *More Than 4 Million Medicare Beneficiaries Will Have Their Medicare Advantage or Stand-Alone Prescription Drug Plan Terminated at the End of 2026*, KFF (Oct. 27, 2026), https://www.kff.org/medicare/more-than-4-million-medicare-beneficiaries-will-have-their-

medicare-advantage-or-stand-alone-prescription-drug-plan-terminated-at-the-end-of-2026/. Many of those beneficiaries may compare available plans for the first time in years, and CMS's published Star Ratings are the government's principal signal to them of plan quality. But improperly calculated Star Ratings mislead potential enrollees about comparative plan quality and may cause them to select plan coverage that does not suit their needs.

12. Uncertainty concerning Star Ratings also impacts healthcare providers. Increased payments to plans based on Star Ratings help support provider incentive arrangements designed to encourage providers to engage members in the very activities the Star Ratings program seeks to promote, including preventive care and screenings, health outcome improvements, and access to the right care.

13. Plaintiffs bring this action because they are committed to maintaining the quality of their plans and delivering high-quality outcomes and experiences for their plan members. CMS's Star Ratings program works best when it is administered consistent with the agency's statutory authority and with appropriate public input from stakeholders on the measures used and their specifications.

14. For the reasons explained herein, Plaintiffs respectfully request that the Court vacate Plaintiffs' 2027 Star Ratings for each of the plan contracts at issue in this action that would have received higher 2027 Star Ratings had those Star Ratings been calculated without the use of the measures that the Court determines CMS used unlawfully. Plaintiffs further request that the Court order CMS to recalculate those vacated Star Ratings without reliance on the measures that the Court determines CMS used unlawfully. And Plaintiffs request that the Court order CMS to give full effect to any such recalculated Star Ratings, including in determinations with respect to the plan contracts at issue in this action that did not receive 2027 Star Ratings.

## PARTIES

15. Plaintiff UnitedHealth Group, Inc. is a Delaware corporation with its principal place of business in Minnesota. UnitedHealth Group, Inc. provides Medicare Advantage (MA) plans for its customers through its affiliated private insurers. Those affiliated private insurers include the other Plaintiffs in this action. Those Plaintiffs, and the MA contracts that each of them holds with CMS, are: Care Improvement Plus South Central Insurance Company (H2406, H8768, H1889, H5322, H1278, H0755, H3256, H5008, H3418, R6801, R0759, H8211, R2604, H0421, H1659, H5435); UnitedHealthcare of Wisconsin, Inc. (H5253, H0169, H3794, H6595); UnitedHealthcare Benefits of Texas, Inc. (H0609, H3805, H0624, H1360); UnitedHealthcare of the Midlands, Inc. (H2802, H0432); Preferred Care Partners, Inc. (H1045); UHC of California (H0543); Physicians Health Choice of Texas, LLC (H4527); Peoples Health, Inc. (H1961); UnitedHealthcare of New York, Inc. (H3387, H3379); UnitedHealthcare Community Plan of Texas, L.L.C. (H4514, H3868); UnitedHealthcare of the Rockies, Inc. (H4604, H4032); Oxford Health Plans (NJ), Inc. (H3113); UnitedHealthcare Plan of the River Valley, Inc. (H0251); UnitedHealthcare of Florida, Inc. (H2509); UnitedHealthcare Insurance Company (H0294, H2385, H6824); Arizona Physicians IPA, Inc. (H0321); UnitedHealthcare of the Mid-Atlantic, Inc. (H2445, H7464); UnitedHealthcare Community Plan, Inc. (H2736, H2247); and UnitedHealthcare of New England, Inc. (H2226, H2272, H4610, H0764). UnitedHealth Group, Inc. is the designated parent organization under the MA program for each of the 51 contracts identified above.

16. Plaintiffs' MA plan offerings under these 51 contracts are negatively impacted by the 2027 Star Ratings at issue in this case. Forty-five of these contracts received 2027 overall Star Ratings calculated using the 26 measures challenged in this action, and it is those Star Ratings that Plaintiffs challenge. The remaining 6 contracts (H2736, H2385, H6824, H4032, H3868, and

H4610) are paid as new contracts and did not receive their own 2027 overall Star Ratings. But the 2027 Star Ratings still impact those 6 contracts because the payments they receive are based on a weighted average of the Star Ratings assigned to the contracts held by the contracting entity's parent organization. 42 C.F.R. § 422.166(d)(2)(vi).

17. Defendant U.S. Department of Health and Human Services ("HHS") is an executive department of the United States federal government.

18. Defendant CMS is an agency within HHS. CMS made the 2027 Star Ratings decision that is the final agency action challenged in this case.

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, to provide remedies set forth in 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-2202.

20. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1), and in this Division under Local Civil Rule 3B, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Division. Plaintiffs' Georgia members are enrolled in five contracts held by Plaintiff Care Improvement Plus South Central Insurance Company (H5322, H1889, H3256, R2604, and H2406). For four of those contracts (H5322, H1889, H3256, and R2604), Georgia has the highest enrollment of any State. For example, H5322 serves approximately 218,576 members nationwide, of which approximately 96,521 reside in Georgia, approximately 22,755 reside in this District, and approximately 2,844 reside in this Division. In total, the five contracts held by Plaintiff Care Improvement Plus South Central Insurance Company serve approximately 222,626 members in Georgia, including approximately 57,074 members who reside in this District and 8,539 members who reside in this Division.

21. Plaintiffs also have a sizable provider network in Georgia, including approximately 9,284 providers in this District and approximately 1,416 providers in this Division. In addition,

CMS collects data, including data that CMS was not authorized to use in calculating Plaintiffs' 2027 Star Ratings, from Plaintiffs' members who reside in this District and Division.

22. CMS has published Plaintiffs' 2027 Star Ratings for beneficiaries in this District and Division, and those Star Ratings constitute final agency action that is causing Plaintiffs concrete competitive, reputational, enrollment, and financial harm in this District and Division. Those Star Ratings also harm Plaintiffs' ability to expand their operations in this District and Division.

23. As examples, CMS rated H5322, H1889, H3256, and R2604 at 3.5 Stars for 2027 and H2406 at 4 Stars. Had CMS excluded the 26 measures challenged in this action, each of H5322, H1889, H3256, and R2604 would have been rated 4.5 Stars, qualifying them for bonus payments and moving them to a higher rebate tier, and H2406 would have been rated 4.5 Stars, moving it to a higher rebate tier. The challenged 2027 Star Ratings therefore deprive Plaintiffs of payments and rebates that allow plans to offer lower premiums, reduced cost-sharing, and supplemental benefits to beneficiaries in this District and Division.

24. Any requirement for administrative exhaustion has been satisfied. CMS allows plans to examine the data used to calculate their Star Ratings and to appeal certain payment determinations under 42 C.F.R. § 422.260. That process, however, is limited to calculation errors and data inaccuracies, and it expressly does not allow plans to challenge "the methodology for calculating the star ratings," "the set of measures included" in the Star Ratings, or the "cut-off points for determining measure thresholds." 42 C.F.R. § 422.260(c)(3)(ii). CMS has not made any exhaustion argument in the *Clover* litigation.

25. On November 16, 2026, Plaintiffs asked CMS to recalculate Plaintiffs' 2027 Star Ratings without the 26 measures challenged in this action. Plaintiffs explained that the

26 measures challenged here should be removed from the calculation of Plaintiffs' 2027 Star Ratings because they suffer the same defects as the *Clover* Measures. CMS has not acted on that request.

## ALLEGATIONS

### I. Legal Framework

#### A. Medicare

26. The Medicare program, authorized under Title XVIII of the Social Security Act, is a federal program that provides health insurance benefits for Americans aged 65 years and older and certain disabled persons. *See* 42 U.S.C. §§ 1395 *et seq*.

27. CMS is the federal agency responsible for administering the Medicare program.

28. The Medicare statute directs CMS to "prescribe such regulations as may be necessary to carry out the administration of" the Medicare program. 42 U.S.C. § 1395hh(a)(1).

29. The statute further instructs that "[n]o rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this subchapter shall take effect unless it is promulgated by the Secretary by regulation." 42 U.S.C. § 1395hh(a)(2). Promulgation "by regulation" ordinarily contemplates publication in the Code of Federal Regulations. *See Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538-39 (D.C. Cir. 1986).

#### B. The Medicare Advantage Program

30. Individuals enrolled in Medicare may elect to receive their benefits under Parts A and B (the "Original Medicare" program) or Part C (the "Medicare Advantage" program).

31. Under Part C, CMS contracts with private insurance payors, commonly known as Medicare Advantage (MA) plans, to provide and arrange for Medicare-covered benefits for Medicare beneficiaries who enroll in their benefit plan. *See* 42 C.F.R. § 422.4. Many MA plans also provide their beneficiaries with prescription drug coverage under Medicare Part D. *See* 42 U.S.C. §§ 1395w-111, 1395w-151(a)(9).

32. For Part C benefits, CMS pays MA plans a monthly sum for each enrolled beneficiary. 42 U.S.C. § 1395w-23(a)(1)(A). To determine these payments, CMS annually establishes "benchmark" per-beneficiary rates in each county, *i.e.*, the amount CMS is willing to pay to cover a beneficiary in the given county. *Id.* § 1395w-23(a)(1)(B), (j). Plans then submit bids to CMS for the estimated cost of providing benefits to plan members in each county. *Id.* §§ 1395w-23(a)(1)(B), 1395w-24(a)(6)(A). If a plan bids below the benchmark, CMS pays the plan a portion of the difference as a "rebate," as part of the monthly per-beneficiary payment. *Id.* § 1395w-23(a)(1)(B)(i), (a)(1)(E). For MA plans that also provide prescription drug coverage, a similar process occurs to determine Part D payments. *See id.* §§ 1395w-111, 1395w-113(a)(1), (4), 1395w-115(a)(1). Plans use the payments and rebates they receive under Parts C and D to lower premiums, reduce cost-sharing, and expand the range of benefits available to members.

33. MA plans also provide supplemental benefits beyond those covered by Original Medicare, such as dental, vision, and hearing coverage. MA plans compete with both Original Medicare and with one another to offer benefits and coverage for eligible enrollees.

## C. The Star Ratings Program

### 1. Overview

34. To encourage MA plans to offer high-quality coverage and to assist Medicare beneficiaries in selecting an MA plan, Congress directed CMS to develop quality ratings for each

MA plan, known as "Star Ratings." CMS assigns ratings to MA plans according to "a 5-star rating system." 42 U.S.C. § 1395w-23(o)(4)(A).

35. Before 2003, the Medicare statute gave CMS discretion in selecting the quality and outcomes measures that the agency deemed appropriate for plan comparison. In 2003, however, Congress restricted CMS to measuring plan quality based on the types of data the agency collected as of November 1, 2003. 42 U.S.C. § 1395w-22(e)(3)(B). CMS acknowledged it would rely on its then-existing measurement systems—the Healthcare Effectiveness Data and Information Set ("HEDIS"), the Health Outcomes Survey ("HOS"), and the Consumer Assessment of Healthcare Providers and Systems ("CAHPS"). 69 Fed. Reg. 46,866, 46,886 (Aug. 3, 2004).

36. When Congress later connected CMS's Star Ratings system to payment in 2010, it identified § 1395w-22(e) as the exclusive source of data for those quality ratings. 42 U.S.C. § 1395w-23(o)(4)(A). Specifically, Congress provided that "[t]he quality rating for a plan shall be determined according to a 5-star rating system (based on the data collected under section 1395w-22(e) of this title)." *Id.* Star Ratings are designed to be "a true reflection of the plan's quality" and based on data that is "complete, accurate, reliable, and valid." 83 Fed. Reg. 16,440, 16,520 (Apr. 16, 2018).

37. Each year, CMS calculates an overall Star Rating for a given MA contract, which summarizes plan quality and performance on a variety of "measures." 42 C.F.R. § 422.162. The overall Star Ratings are set in half-Star increments, with 1 star being the lowest rating and 5 stars being the highest. *See id.* §§ 422.162(b), 422.166(h)(1)(ii).

38. Despite Congress's instruction that CMS calculate the Star Ratings "based on" "the data collected under [§] 1395w-22(e)," 42 U.S.C. § 1395w-23(o)(4)(A), CMS admits it "relies on

other data" for some of the measures that factor into the Star Ratings, Appellants' Br. 46-47, *Clover*, No. 26-12553 (11th Cir. Aug. 31, 2026).

39. CMS also does not codify its Star Ratings measures or their specifications in the Code of Federal Regulations. Instead, CMS publishes them in annual sub-regulatory guidance known as "Technical Notes," which CMS revises each year outside of notice-and-comment rulemaking. CMS has expressly stated that it "will not codify a list of measures and specifications in regulation text." 83 Fed. Reg. 16,440, 16,537 (Apr. 16, 2018). CMS reiterated that position in its opening brief in the *Clover* Eleventh Circuit appeal, acknowledging that the measure specifications "are not implemented through notice-and-comment rulemaking." Appellants' Br. 8, *Clover*, No. 26-12553 (11th Cir. Aug. 31, 2026).

**2. Publication of Star Ratings**

40. CMS generally publishes Star Ratings for a given year in the fall of the preceding year. For example, CMS published the 2027 Star Ratings in October 2026. Star Ratings information is widely available for Medicare beneficiaries to consider when choosing to enroll in an MA plan. Measure scores and overall Star Ratings allow beneficiaries to compare health plans.

41. CMS prominently displays Star Ratings for available MA plans in its online and print resources, including those available in this District and Division, as required by statute. *See* 42 U.S.C. § 1395w-21.

**3. Impact of Star Ratings on Plan Beneficiaries**

42. Star Ratings for a given plan year have a significant impact on the funding that MA plans receive from CMS in the subsequent plan year—funding that plans use to offer lower premiums, reduced cost-sharing, and supplemental benefits to their members. This direct impact manifests in three main ways.

43. *First*, Star Ratings determine MA plans' eligibility for qualifying bonus payments ("QBPs") under 42 U.S.C. § 1395w-23(o). As explained above, MA plans submit bids for the annual payments they receive from CMS, and MA plans receive rebates if their bid for a given county falls below CMS's benchmark rate for that county. Under the QBP program, MA plans that have a rating of at least 4 Stars bid against a benchmark that is increased by 5 to 10 percent. 42 U.S.C. § 1395w-23(o)(1)(C), (2), (3)(A)(i). That benchmark increase means that plans can receive a higher rebate and then use that increased funding to lower premiums, reduce cost-sharing, and expand the benefits and healthcare offerings available to their members. The result is more choice for beneficiaries, better coverage, and better benefits.

44. *Second*, Star Ratings impact rebate amounts in another way. They determine a plan's "rebate percentage" under 42 U.S.C. § 1395w-24(b)(1)(C)—*i.e.*, the portion of the difference between a plan's bid and the applicable benchmark that the plan may retain as a rebate. Plans rated 3 Stars or lower retain 50 percent of that difference; plans rated 3.5 or 4 Stars retain 65 percent; and plans rated 4.5 or 5 Stars retain 70 percent. A single half-Star change can therefore allow a single MA plan to spend hundreds of millions more dollars on its members, allowing for lower premiums, reduced cost-sharing amounts, and increased benefits.

45. *Third*, although "new" MA contracts do not themselves receive Star Ratings, their eligibility for payments and rebates depends on a weighted average of the Star Ratings assigned to the plan contracts held by the contracting entity's parent organization. 42 C.F.R. § 422.166(d)(2)(vi).

46. Higher Star Ratings therefore allow existing and new MA plans to offer more comprehensive and richer benefits to beneficiaries. After the release of Star Ratings in October each year, CMS makes QBP determinations in November, confirming which contracts can

incorporate bonus payments into their benefit design for the following plan year. CMS provides additional parameters for subsequent year bids through the Advance Notice (released by early February) and the Rate Notice (released by the first Monday in April). That timeline allows plans to develop actuarially sound bids that are submitted to CMS by the deadline on the first Monday in June.

47. For the 2027 Star Ratings, this timeline translates as follows: CMS released its 2027 Star Ratings in October 2026. CMS is expected to announce QBP determinations in November 2026. CMS will publish its Advance Notice for plan year 2028 by early February 2027, and will publish its Rate Notice for plan year 2028 by April 5, 2027. The deadline for plans' 2028 bids is June 7, 2027.

48. Star Ratings also bear directly on plans' eligibility to participate in the MA program because CMS may terminate an MA plan that has failed to achieve a Part C summary rating of at least 3 Stars for three consecutive contract years. 42 C.F.R. § 422.510(a)(4)(xi). CMS also may deny an entity's application for a new contract if the entity has a plan that "[r]eceived any combination of Part C or D summary ratings of 2.5 or less in both of the two most recent Star Rating periods." *Id.* § 422.502(b)(1)(i)(D).

49. Thus, higher Star Ratings have tremendous value to plan beneficiaries and plans alike. They enhance the scope and quality of benefits and healthcare offerings that plan beneficiaries receive. And they allow MA plans to compete in the marketplace and even remain eligible to continue to participate in the MA program.

## II. The *Clover* Decision and CMS's Subsequent Implementation

50. On November 7, 2025, Clover filed suit in this District to challenge its 2026 Star Rating. On May 27, 2026, the Court granted in part Clover's motion for summary judgment, set

aside Clover's 2026 Star Rating, and ordered CMS to recalculate it. *Clover*, 2026 WL 1483515, at *25. The Court's order was based on two holdings.

51. *First*, the Court held that CMS could not use 10 of the 20 measures that Clover challenged because those measures are not "based on" the data collected under 42 U.S.C. § 1395w-22(e). 42 U.S.C. § 1395w-23(o)(4)(A). Those 10 measures were (in 2026 numbering): Medication Adherence for Diabetes Medications (D08); Medication Adherence for Hypertension (RAS antagonists) (D09); Medication Adherence for Cholesterol (Statins) (D10); Call Center - Foreign Language Interpreter and TTY Availability (C33); Call Center - Foreign Language Interpreter and TTY Availability (D01); Reviewing Appeals Decisions (C32); Rating of Drug Plan (D05); Getting Needed Prescription Drugs (D06); MTM Program Completion Rate for CMR (D11); and Statin Use in Persons with Diabetes (D12). *Clover*, 2026 WL 1483515, at *14. The measures that were numbered C33, C32, and D12 for 2026 are numbered C32, C31, and D11, respectively, for 2027. The measure that was numbered D11 for 2026 is not in use for 2027. Congress has not broadened CMS's data-source authority since *Clover*.

52. *Second*, the Court held that CMS's use of the other 10 measures Clover challenged was procedurally invalid because CMS never promulgated their specifications by regulation through notice-and-comment rulemaking, as required by 42 U.S.C. § 1395hh(a)(2). Those 10 measures were (in 2026 numbering): Annual Flu Vaccine (C03); Improving or Maintaining Physical Health (C04); Improving or Maintaining Mental Health (C05); Reducing the Risk of Falling (C15); Improving Bladder Control (C16); Getting Needed Care (C22); Getting Appointments and Care Quickly (C23); Customer Service (C24); Rating of Health Care Quality (C25); and Care Coordination (C27). *Clover*, 2026 WL 1483515, at *22-25. The measures that

were numbered C22, C23, C24, C25, and C27 for 2026 are numbered C21, C22, C23, C24, and C26, respectively, for 2027.

53. The Court held that the annual measure specifications for Star Ratings are "statement[s] of policy," a point CMS did not dispute; that the measure specifications establish or change a "substantive legal standard"—namely, CMS's Star Ratings calculations—because those calculations "function to define the scope of [MA plans'] legal rights to rebates"; and that those calculations "govern the payment for services" because "[t]he fact that the ratings trigger statutorily mandated funding increases" means the Star Ratings are "a deciding principle" in CMS's payments to plans for the healthcare services that the plans' beneficiaries receive. *Clover*, 2026 WL 1483515, at *22-25 (citing 42 U.S.C. § 1395hh(a)(2)).

54. Having concluded that CMS should not have used the 20 measures Clover challenged, the Court vacated Clover's 2026 Star Rating and ordered CMS "to recalculate that rating in a manner consistent with th[e] [Court's] Order." *Clover*, 2026 WL 1483515, at *25. In response to the Court's order, CMS recalculated Clover's 2026 Star Rating without use of the 20 measures Clover successfully challenged. In calculating Clover's 2027 Star Rating, CMS again removed those measures.

## III. Plaintiffs' 2027 Star Ratings

55. CMS released the final 2027 Star Ratings on October 8, 2026. CMS published Plaintiffs' overall and measure-level 2027 Star Ratings through its public beneficiary-facing tools, including for the 45 contracts at issue in this action that were assigned 2027 Star Ratings. CMS did not promulgate any of the measures that factored into the 2027 Star Ratings via notice-and-comment rulemaking. It also used certain measures that are not based on data collected under 42 U.S.C. § 1395w-22(e).

### A. The Immediate and Continuing Harms to Plan Beneficiaries

56. The 2027 Star Ratings create a substantial likelihood of imminent, concrete, particularized, direct, and substantial harm to Plaintiffs and their plan beneficiaries. If those Star Ratings are allowed to stand, it will result in significant monetary loss to Plaintiffs and reduce the availability of critical benefits that seniors rely upon. For example, the 45 contracts at issue that received 2027 Star Ratings would receive a higher 2027 overall Star Rating if CMS were to exclude the 26 measures challenged in this action: 10 contracts would increase by 1.5 Stars; 30 contracts by 1 Star; and 5 contracts by 0.5 Star. Thirty-five of those contracts, which together serve approximately 2,900,000 members, were rated below 4 Stars but would rate 4 Stars or higher, qualifying them for QBPs under 42 U.S.C. § 1395w-23(o). And 43 contracts would move into a higher rebate-percentage tier under 42 U.S.C. § 1395w-24(b)(1)(C). H5322, the contract with the most members in this District, serves approximately 218,576 members nationwide, including approximately 96,521 in Georgia, approximately 22,755 in this District, and approximately 2,844 in this Division. It was rated 3.5 Stars but would rate 4.5 Stars with exclusion of the 26 measures and therefore would receive QBPs and higher rebates—*i.e.*, more funding that will allow it to lower premiums, reduce cost-sharing, and provide richer benefits.

57. The 6 new contracts at issue in this case also would be able to provide more robust benefits to plan members if CMS were to recalculate the 2027 Star Ratings for the other 45 contracts at issue. Those 6 new contracts' eligibility for QBPs and rebates depends on a weighted average of the Star Ratings assigned to the contracts held by the contracting entity's parent organization. 42 C.F.R. § 422.166(d)(2)(vi). Plaintiffs are affiliated plans that share a common parent organization: UnitedHealth Group, Inc. Accordingly, if the 45 other contracts at issue were to receive higher overall 2027 Star Ratings, the 6 new contracts would receive a higher

weighted average and thereby obtain higher payments and rebates that would allow them to lower premiums, reduce cost-sharing, and expand benefits.

58. More specifically, the 2027 Star Ratings will affect Plaintiffs' QBP determinations and rebate percentages for plan year 2028. Those effects are already ongoing. CMS is expected to announce QBP determinations based on the 2027 Star Ratings in November 2026 so that MA plans will have this information before they start to develop plan year 2028 bids, which are due on June 7, 2027. 42 U.S.C. § 1395w-24(a)(1)(A). CMS is expected to issue parameters for 2028 bids by February 2027 (the Advance Notice) and to finalize those parameters by April 5, 2027 (the Rate Notice). Those are statutory deadlines designed to give plans two months to develop actuarially sound bids in time for the June 2027 bid deadline. *Id.* § 1395w-23(b)(1)(B)(i), (2).

59. After bids are submitted in June 2027, CMS reviews and finalizes the contracts for the 2028 plan year. If Plaintiffs' 2027 Star Ratings are permitted to stand—adversely impacting the amount of QBPs and rebates they will receive—Plaintiffs will have no choice but to submit bids without some of the valuable benefits they would otherwise offer their members. A Star Ratings recalculation that removes the 26 measures challenged here would enable Plaintiffs to develop more competitive plans and benefits for the 2028 plan year.

60. The 2027 Star Ratings are already harming plan beneficiaries. The annual coordinated election period for the 2027 plan year began on October 15, 2026, and ends on December 7, 2026. During that period, Medicare beneficiaries compare plans using the 2027 Star Ratings that CMS displays. 42 U.S.C. § 1395w-21(e)(3)(B)(v). Medicare beneficiaries also have the option to switch to a plan with a 5-Star Rating at any time. 42 C.F.R. § 422.62(b)(15). Because Plaintiffs' 2027 Star Ratings are lower than a proper methodology would yield, potential enrollees, agents and brokers, and employers that offer MA options to retirees will perceive Plaintiffs' plans

as lower quality than they are. And because Star Ratings are relative, the harm is compounded. Beneficiaries may receive an inaccurate picture of the relative quality of plans. Brokers and third-party marketing organizations may deprioritize or decline to market plans rated below 4.0 Stars, and employers and plan sponsors offering MA options to retirees may rely on Star Ratings as a proxy for quality, impairing Plaintiffs' ability to compete for and retain those relationships. Conversely, calculating Plaintiffs' 2027 Star Ratings under a proper methodology would increase their ratings and, in turn, improve Plaintiffs' competitive position, increase the number of beneficiaries who would select Plaintiffs' MA plans for the coming year, and increase payments enabling development of more competitive plans and benefits for the subsequent plan year.

61. The lack of notice-and-comment rulemaking also harms Medicare beneficiaries. Congress adopted 42 U.S.C. § 1395hh(a)(2) against the backdrop of the significant financial investment by the federal government in the Medicare program and the important impact that Medicare benefits can have on beneficiary health and wellbeing, where now even a half-Star shift can translate into significantly richer benefits for enrollees.

62. The Star Ratings framework was meant to rest on clinically grounded measures refined through public participation in the rulemaking process, so that beneficiaries could compare plans on a reliable basis.

63. Subjecting the challenged measures to notice-and-comment rulemaking would have allowed plans, clinicians, patient advocates, and other stakeholders to identify potential issues for CMS to consider. Notice requirements exist "(1) to ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected parties, and (3) to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Int'l Union, United Mine Workers of Am.*

*v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005). That process did not occur for the 26 measures challenged in this action.

**B. Final Agency Action**

64. CMS's decision on Plaintiffs' 2027 Star Ratings is final agency action under 5 U.S.C. § 704.

65. The decision is "agency action" under 5 U.S.C. § 551(6), (13) because it is an "order" constituting an agency's final disposition in a matter other than rulemaking.

66. The decision is "final" agency action because it has determined Plaintiffs' legal rights and obligations and has otherwise triggered legal consequences for Plaintiffs and plan beneficiaries. Star Ratings have a concrete legal effect on MA plans and their members. For example, Star Ratings dictate plans' eligibility for QBPs and rebates that plans use to expand benefits for their members. CMS may terminate a plan's MA contract that has failed to achieve a Part C summary rating of at least 3 Stars for three consecutive contract years. 42 C.F.R. § 422.510(a)(4)(xi). And regulations permit beneficiaries to switch at any time to a plan with a 5-Star Rating. *Id.* § 422.62(b)(15).

67. Plaintiffs' claims challenge the lawfulness of measures CMS applied in calculating Plaintiffs' 2027 Star Ratings, so they are not subject to the QBP administrative-review process or any other administrative-review process. *See* 42 C.F.R. § 422.260(c)(3)(ii) ("An administrative review cannot be requested for … the methodology for calculating the star ratings (including the calculation of the overall star ratings); … [or] the set of measures included in the star rating system[.]"); *SCAN Health Plan v. HHS*, 2024 WL 2815789, at *4 n.3 (D.D.C. June 3, 2024). Plaintiffs do not challenge the facial accuracy of CMS's arithmetic; they challenge the lawfulness of the measures that factored into the calculation. No administrative mechanism exists by which Plaintiffs may obtain reconsideration of the CMS actions challenged in this case.

68. Nevertheless, Plaintiffs raised their objections to CMS's use of the 26 challenged measures in calculating Plaintiffs' 2027 Star Ratings through a written submission to CMS on November 16, 2026. CMS has not acted on that request. Further administrative review would therefore be futile.

## CLAIMS FOR RELIEF

### COUNT I
### Agency Action Without Observance of Procedure Required by Law, In Excess of Statutory Authority, and Not in Accordance with Law (5 U.S.C. § 706(2)(A), (C)-(D); 42 C.F.R. §§ 422.164, 423.184)

69. Plaintiffs incorporate the above allegations by reference.

70. The Administrative Procedure Act (APA) prohibits agency action that is without observance of procedure required by law, in excess of statutory authority, or not in accordance with law. 5 U.S.C. § 706(2)(A), (C)-(D).

71. In *Clover*, the Court ruled that CMS acted without observance of procedure required by law by failing to conduct Medicare Act notice-and-comment rulemaking under 42 U.S.C. § 1395hh(a)(2) with respect to 10 measures that CMS used to calculate Clover's challenged 2026 Star Rating. *Clover*, 2026 WL 1483515, at *22-25.

72. In calculating Plaintiffs' 2027 Star Ratings, CMS used the following measures that the Court invalidated in *Clover* for lack of notice-and-comment rulemaking: 2027 numbers C03, C04, C05, C15, C16, C21, C23, and C26.[4] CMS also used the following additional measures in calculating Plaintiffs' 2027 Star Ratings, whose specifications likewise were never promulgated by regulation through notice-and-comment rulemaking under 42 U.S.C. § 1395hh(a)(2): 2027 numbers C01, C06, C10, C13, C14, C17, C18, C19, C20, C25, D05, D06, D08, D09, D10, D11,

[4] The measures that are numbered C21, C23, and C26 for 2027 were numbered C22, C24, and C27, respectively, for 2026.

D12, and D13.[5] Some of these measures—D05, D06, D08, D09, D10, and D11—were challenged in *Clover* for lack of notice-and-comment rulemaking, but the Court did not reach that challenge as to those measures because it invalidated them for lack of statutory authority.

73. For all 26 of these measures, the specifications that determine Plaintiffs' scores—including the eligible population (denominator), the qualifying events or responses (numerator), exclusions and exceptions, measurement and look-back periods, data-collection and sampling rules, and any case-mix or other adjustments—appear only in the Technical Notes and the underlying HEDIS, HOS, CAHPS, and Part D measure specifications that CMS incorporates into those Technical Notes by reference.

74. *Clover* held that the measure specifications for Star Ratings are statements of policy that establish or change substantive legal standards (the Star Ratings calculations) governing "payment for services" because the Star Ratings determine MA plans' eligibility for QBPs and rebates that help pay for the healthcare services that plans' beneficiaries receive. *Clover*, 2026 WL 1483515, at *22-25. The measure specifications are also statements of policy that establish or change substantive legal standards governing "the scope of benefits" and "the eligibility of … entities … or organizations to furnish … services or benefits," 42 U.S.C. § 1395hh(a)(2), because the QBPs and rebates allow plans to expand the scope of benefits for plan members, and the Star Ratings determine plans' eligibility to participate in the MA program. *See supra* ¶¶ 42-49.

75. CMS's own regulations independently require notice-and-comment rulemaking. *See* 42 C.F.R. § 422.164(c)(2) ("CMS will announce potential new measures and solicit

[5] The measures that are numbered C17, C18, C19, C20, C25, and D11 for 2027 were numbered C18, C19, C20, C21, C26, and D12, respectively, for 2026. The measures that are numbered D12 and D13 for 2027 were not used for 2026.

feedback … and then subsequently will propose and finalize new measures through rulemaking."); *id.* § 422.164(d)(2) (same for substantive updates to existing measures); *see also id.* § 423.184(c)(2), (d)(2) (Part D).

76. CMS's use of the 26 measures in calculating Plaintiffs' 2027 Star Ratings was therefore agency action without observance of procedure required by law, in excess of statutory authority, and not in accordance with law, within the meaning of 5 U.S.C. § 706(2)(A), (C)-(D).

**COUNT II**
**Agency Action in Excess of Statutory Authority and Not in Accordance with Law**
**(5 U.S.C. § 706(2)(A), (C))**

77. Plaintiffs incorporate the above allegations by reference.

78. The APA prohibits agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "not in accordance with law." 5 U.S.C. § 706(2)(A), (C).

79. In *Clover*, the Court ruled that CMS exceeded its statutory authority and acted contrary to law as to 10 measures that CMS used to calculate Clover's challenged 2026 Star Rating because those measures are not based on data collected under 42 U.S.C. § 1395w-22(e). 2026 WL 1483515, at *14.

80. In calculating Plaintiffs' 2027 Star Ratings, CMS used the following measures that the Court struck down in *Clover* on these statutory-authority grounds: 2027 numbers D05, D06, D08, D09, D10, and D11.[6] CMS's calculation of Plaintiffs' 2027 Star Ratings also used the following additional measures, which likewise are not based on data collected under 42 U.S.C. § 1395w-22(e): 2027 numbers D12 and D13 (neither of which was a measure used for 2026).

[6] The measure that is numbered D11 for 2027 was numbered D12 for 2026.

81. In *Clover*, the Court held that every Part D measure Clover challenged was unlawful under 42 U.S.C. § 1395w-23(o)(4)(A). That holding covered even Part D measures that draw on CAHPS survey data. The Court explained that "a measure's utilization of CAHPS data is not, standing alone, a sufficient condition to make that data 'collected under section 1395w-22(e).'" *Clover*, 2026 WL 1483515, at *9. That is because the Medicare Act contains "two different sources of data collection authority": Part C authority (for example, 42 U.S.C. § 1395w-22(e)(3)) and Part D authority (for example, 42 U.S.C. § 1395w-104(d)). *Id.* The Rating of Drug Plan and Getting Needed Prescription Drugs measures "use data collected under Part D authority, not Part C, where Section 1395w-22(e)'s grant of authority is located." *Id.* Thus, neither measure relies on "data collected under section 1395w-22(e)." *Id.* The Court reached the same conclusion for the other Part D measures, "which do not stem from HEDIS, HOS, or CAHPS data at all." *Id.*

82. The two additional measures challenged in this Count are 2027 measures that were not used for 2026 and therefore were not at issue in *Clover*: Concurrent Use of Opioids and Benzodiazepines (D12) and Polypharmacy: Use of Multiple Anticholinergic Medications in Older Adults (D13). CMS calculates both measures exclusively from Prescription Drug Event ("PDE") data—the claim-level records that Part D sponsors submit to CMS for payment. They are not HEDIS, HOS, or CAHPS measures, and they do not rely on any data collected under 42 U.S.C. § 1395w-22(e). Indeed, PDE data could not have been among the types of data collected as of November 1, 2003, because the Part D program and its PDE submission requirements did not begin until 2006. D12 and D13 are calculated from the same PDE data source as the medication-adherence measures (D08, D09, and D10) and Statin Use in Persons with Diabetes (D11 in 2027 numbering) that *Clover* held unlawful. Moreover, CMS does not calculate D12 and D13 by adding

PDE data to a HEDIS, HOS, or CAHPS data set. PDE data, collected under Part D authority, is the only data used to calculate those measures.

83. CMS's use of the above-listed 8 measures in calculating Plaintiffs' 2027 Star Ratings was therefore agency action in excess of statutory authority and not in accordance with law, within the meaning of 5 U.S.C. § 706(2)(A), (C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Declare that CMS acted without observance of procedure required by law, in excess of statutory authority, and not in accordance with law by failing to conduct notice-and-comment rulemaking under 42 U.S.C. § 1395hh(a)(2) and 42 C.F.R. §§ 422.164, 423.184 with respect to the 26 measures identified in Count I—2027 numbers C01, C03, C04, C05, C06, C10, C13, C14, C15, C16, C17, C18, C19, C20, C21, C23, C25, C26, D05, D06, D08, D09, D10, D11, D12, and D13—and that CMS's use of those measures in calculating Plaintiffs' 2027 Star Ratings was unlawful.

B. Declare that CMS acted in excess of statutory authority and not in accordance with law by using the measures identified in Count II—2027 numbers D05, D06, D08, D09, D10, D11, D12, and D13—in calculating Plaintiffs' 2027 Star Ratings;

C. Vacate Plaintiffs' 2027 Star Ratings for each of the plan contracts at issue in this action that would have received higher 2027 Star Ratings had those Star Ratings been calculated without the use of the measures that the Court determines CMS used without observance of procedure required by law, in excess of statutory authority, or not in accordance with law;

D. Remand to CMS with instructions to recalculate the 2027 Star Ratings for each of the plan contracts at issue in this action that would have received higher 2027 Star Ratings had those Star Ratings been calculated without the use of the measures that the Court determines CMS used without observance of procedure required by law, in excess of statutory authority, or not in accordance with law, without reliance on those measures;

E. Order CMS to give full effect to the 2027 Star Ratings it recalculates for each of the plan contracts at issue in this action that would have received higher 2027 Star Ratings had those Star Ratings been calculated without the use of the measures that the Court determines CMS used without observance of procedure required by law, in excess of statutory authority, or not in accordance with law, including in CMS's determinations of QBPs, rebate percentages, and review and approval of 2028 bids (including by permitting Plaintiffs to revise any already-submitted bids); in the

2027 Star Ratings that CMS publicly displays; and in any other determination that depends on the 2027 Star Ratings, including determinations with respect to the plan contracts at issue in this action that did not receive 2027 Star Ratings;

F. Retain jurisdiction to ensure CMS's compliance with the Court's orders;

G. Award Plaintiffs their costs and attorneys' fees as permitted by law;

H. Grant Plaintiffs such other and further relief as the Court deems just and proper.

Dated: November 19, 2026

Respectfully submitted,

*/s/ R. Joseph Burby, IV*
R. Joseph Burby, IV
Roby Jernigan
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7670
joey.burby@alston.com
roby.jernigan@alston.com

Jeffrey B. Wall (*pro hac vice* forthcoming)
Geoffrey M. Sigler (*pro hac vice* forthcoming)
Matthew S. Rozen (*pro hac vice* forthcoming)
Robert A. Batista (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
jwall@gibsondunn.com

*Counsel for Plaintiffs*